IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TINA LEDFORD                                                PLAINTIFF

V.                          NO. 15-5226

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Tina Ledford, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income benefits (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.    Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on July 24, 2012, alleging an inability to work since December 31, 2010, due to diabetes, fibromyalgia, carpal tunnel syndrome, chronic obstructive pulmonary disease (COPD), obesity, knee problems, collapsed right nasal passage, and high cholesterol. (Doc. 18, pp. 201-204, 215, 230). An administrative hearing was held on August 21, 2013, at which Plaintiff appeared with counsel and testified. (Doc. 18, pp. 35-67).

By written decision dated May 16, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe-

1

fibromyalgia, obesity, noninsulin dependent diabetes mellitus, recurrent sciatica/myofascial strain, chronic obstructive pulmonary disease (COPD)/restrictive lung disease, high blood pressure, bilateral carpal tunnel syndrome, history of syncope and major depression not otherwise specified. (Doc. 18, p. 18). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 18, p. 18). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs. She cannot climb ladders, ropes and scaffolds and can only occasionally handle and finger bilaterally. The claimant must avoid concentrated exposure to temperature extremes, humidity, fumes, odors, dusts, gases and poor ventilation and must avoid moderate exposure to hazards, including no driving as a part of work. In addition, the claimant can do work that is simple and repetitive with incidental interpersonal contact and direct and concrete supervision.

(Doc. 18, pp. 20-21). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would not be able to perform any past relevant work, but there were other jobs she would be able to perform, such as surveillance system monitor and call out operator. (Doc. 18, pp. 27-28).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on August 5, 2015. (Doc. 18, pp. 5-9). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 16, 17).

2

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3).

3

A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC. See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920, abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520, 416.920

**II.  Discussion:**

Plaintiff raises the following issues in this matter: 1) Whether the ALJ erred in his RFC determination; and 2) Whether the ALJ erred in his determination that substantial occupational bases exists. (Doc. 16).

**A. Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5)

4

functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Doc. 18, p. 22). The ALJ considered Plaintiff's daily activities, noting that she had mild restriction. (Doc. 18, p. 19). He discussed the fact that Plaintiff could sometimes do a little bit of laundry; went shopping but would have to lean on the cart or get a motorized cart; and after the alleged onset date, Plaintiff went to school in 2011 to become a nail technician, and worked at On Stage in December of 2011, which the ALJ believed showed that Plaintiff was capable of performing work like tasks and was not limited to the extent alleged. (Doc. 18, pp. 19, 23). In addition, the ALJ discussed the fact that despite her complaints concerning breathing difficulties, and her treating physician's recommendation to stop, Plaintiff continued to smoke up to a half a pack of cigarettes a day, which discredits her disability allegations. (Doc. 18, p. 23). See Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999); Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997).

The Court finds there is substantial evidence to support the ALJ's credibility analysis.

**B.  RFC Determination:**

5

Plaintiff argues that the ALJ's determination that Plaintiff retained the RFC for occasional bilateral use of her hands is not supported by substantial evidence, and that sedentary work requires the good use of both hands and fingers. Alternatively, Plaintiff argues the matter should be remanded for additional development of the RFC determination in light of Dr. Al-Khatib's examination.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Gilliam's v. Barnhart, 3 93 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *11 (N.D. Iowa Mar. 31, 2015)(quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013)).

As indicated earlier, the ALJ found that Plaintiff had the RFC to perform sedentary work with certain postural, environmental and manipulative limitations, which includes only

6

occasional handling and fingering bilaterally. In making this determination, the ALJ considered all of the medical records, physicians' opinions, and Plaintiff's testimony of her limitations. More specifically, the ALJ discussed the fact that Plaintiff testified that her hands had been bothering her for eight-years, and became so bad that she had to stop working at the end of 2011, and that in her left upper extremity, her first three fingers would get numb, which would shoot up to her elbow, and she could not lift with it and would drop things. (Doc. 18, p. 21). She also testified that two to three times a week, she would have similar issues with her right hand. (Doc. 18, p. 21). The ALJ also addressed the fact that some of Plaintiff's activities belied her alleged hand impairments, because she could do some laundry, do dishes if she leaned on the counter, shop while leaning on the cart, not lift a gallon of milk with her left hand and not hold on for very long with her right hand, and thought a gallon pitcher of tea would be the most she could lift. (Doc. 18, p. 22). The ALJ also discussed the fact that Plaintiff was able to attend nail tech school after the alleged onset date, and work at a nail salon thereafter. (Doc. 18, p. 23).

In addition, the Court notes that prior to the alleged onset date, on March 29, 2010, Dr. Tad Morgan conducted a General Physical Examination of Plaintiff. (Doc. 18, p. 279). Dr. Morgan noted that Plaintiff had been a smoker for 20 years and that the range of motion in her extremities and spine was within normal limits. (Doc. 18, pp. 279, 281). He also reported that Plaintiff could perform all limb functions, and had 100% grip in both hands. (Doc. 18, p. 282). He diagnosed her with diabetes mellitus, by history; carpal tunnel syndrome – right greater than left by history; depression by history; chronically dislocating left patella by history; and concluded that she had mild limitations in walking, lifting, carrying, handling or fingering. (Doc. 18, p. 283).

On September 25, 2012, Dr. C. R. Magness conducted a General Physical Examination, wherein he found that Plaintiff could perform all limb functions, except she could not squat/arise from a squatting position; had 50% grip in her right hand and 30% grip in her left hand; had severe limitations in her ability to walk, stand, lift, and carry; and moderate to severe limitations in her ability to handle. (Doc. 18, pp. 394-395).

Subsequently, on October 21, 2012, Plaintiff completed a Function Report – Adult – where she stated that she was able to dress herself, feed herself, use the toilet by herself, prepare sandwiches, do laundry and dishes sometimes, go outside every day to get the mail, shop for food two to three times a month; play cards, play board games, and go to the library. (Doc. 18, pp. 245-248).

On November 2, 2012, a Physical RFC Assessment was completed by non-examining consultant, Dr. Sharon Keith, where she found that Plaintiff would be able to perform sedentary work with postural limitations, and should avoid even moderate exposure to hazards (machinery, heights, etc.). (Doc. 18, pp. 77-78). She found no manipulative, visual, or communicative limitations. (Doc. 18, p. 78).

On February 11, 2013, Plaintiff reported to Megan Justus, LCSW, that she had continued to walk the dog daily, judging how she felt, and some days walked really far and other days just walked around the block. (Doc. 18, p. 450). Ms. Justus reported that she praised Plaintiff for her daily walking and for getting out of the house more, and for example, "taking care of nephew's baby and being around family and friends." (Doc. 18, p. 451).

On February 21, 2013, non-examining consultant, Dr. Jerry Thomas, completed a Physical RFC Assessment, also finding that Plaintiff could perform unskilled sedentary work with certain postural and environmental limitations. (Doc. 18, pp. 111, 115).

8

On December 12, 2013, Plaintiff underwent a neurological evaluation and examination by Dr. Ahmad Al-Khatib. (Doc. 18, p. 467). Dr. Al-Khatib reported that Plaintiff smoked about a half a pack of cigarettes per day, that a motor examination revealed normal muscle bulk and tone, her motor strength was 5/5 throughout, Tinel's sign was positive over both wrists, there was evidence of diffuse tender points, examination of the spine was unremarkable, and that Plaintiff had some difficulties performing tandem walk. (Doc. 18, p. 468). Dr. Al-Khatib performed electromyography and nerve conduction studies of both upper extremities and the left lower extremity, which revealed the following:

1. Moderate chronic bilateral carpal tunnel syndromes
2. Fibromyalgia
3. Possible diabetic small fiber pure sensory peripheral polyneuropathy

(Doc. 18, p. 468). Dr. Al-Khatib found that given the above-mentioned impression, Plaintiff had moderate limitations in standing, walking, carrying and handling objects. (Doc. 18, p. 468).

In his decision, the ALJ gave substantial weight to the opinion of Dr. Morgan, taking into account his finding that Plaintiff could perform sedentary work with only occasional handling and fingering. (Doc. 18, p. 25). With respect to Dr. Magness' opinion, the ALJ stated that he accounted for his opinion in his RFC which limits Plaintiff to sedentary work and occasional handling and fingering, and to the extent his opinion was relied upon for a more restrictive RFC, it was given little weight. The ALJ further stated that Dr. Magness' findings were not consistent with those from Dr. Morgan, and that even though there was an approximately two and one-half year difference between their evaluations, the treatment records did not show the type of decline in Plaintiff's condition that would support finding Plaintiff to have more extensive limitations. (Doc. 18, p. 25).

9

The ALJ gave the opinions of Dr. Al-Khatib substantial weight, because they were based upon objective nerve conduction velocity testing and electromyelogram testing. The ALJ concluded that his opinion did not indicate that Plaintiff had any greater limitations than those found in the RFC. (Doc. 18, p. 26).

Plaintiff cites to Henry v. Astrue, No. 09-4074 (W.D. Ark. June 1, 2010) and Todd v. Colvin, No. 2:15-CV-02048 (W.D. Ark. Sept. 17, 2015) in support of his position. However, the Court finds those cases to be distinguishable from the one now before it. In Henry, the ALJ failed to propose any hypothetical to the VE setting forth Plaintiff's lack of range of motion with her left wrist in order to determine what sedentary jobs were available for Plaintiff to perform. Such is not the case here. In fact, the ALJ in this case modified his first hypothetical question to the VE to include only occasional handling and fingering bilaterally, and the VE responded that the jobs of callout operator and surveillance system monitor would still be available. (Doc. 18, pp. 63-64). In Todd, the ALJ determined that Plaintiff would be able to perform frequent non-repetitive grasping and fingering with her left upper extremity, when Plaintiff consistently sought out treatment for pain in her left wrist and hand. In the case now before the Court, the ALJ limited Plaintiff to occasional handling and fingering.

Finally, it is noteworthy that the VE testified that reaching, handling and fingering were non-existent in the surveillance system monitor position. (Doc. 18, p. 64).

Based upon the foregoing, the Court finds that there is substantial evidence to support the ALJ's RFC determination.

**C. Hypothetical Question and Occupational Base:**

Plaintiff contends that the jobs identified as within Plaintiff's ability amount to such a small percentage of the workforce that scientific notation would be required to competently state it. Accordingly, she argues that there is not a significant occupational base.

At the hearing, the VE testified that with respect to the callout operator position, there were 115 jobs in the state of Arkansas and 16,111 in the national economy. (Doc. 18, p. 60). Regarding the surveillance system monitor position, there were 115 jobs in the state of Arkansas and 16,867 in the national economy. The Eighth Circuit found in Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1997) that 200 jobs of addresser or document preparer in Iowa and 10,000 in the national economy to be a significant number. More recently, in Gholston v. Colvin, No. 14-CF-2064-LRR, 2015 WL 6167824 (N.D. Iowa Oct.21, 2015), in analyzing the issue presented, the Court referred to Welsh v. Colvin, 765 F.3d 927, 930 (8th Cir. 2014), where the Eighth Circuit held that where there were 330 positions regionally and 35,000 positions nationally, there were a sufficient number of jobs to satisfy the requirement. 2015 WL 6167824 at *23. The Court in Gholston therefore found that 550 local positions in Iowa and 57,700 positions nationally fell within the bounds set forth by the Eighth Circuit.

Although in this case the number of local jobs available is less than those referenced by the cases cited above, the Court also finds guidance in 42 U.S.C. §423(d)(2)(A), which provides, in pertinent part, that "'work which exists in the national economy'" means work which exists in significant numbers either in the region where such individual lives *or* in several regions of the country."(italics added). In the case now before the Court, there are 16,111 callout operators in the national economy and 16,867 surveillance system monitor jobs in the national economy. Therefore, even if the Court found that 115 local jobs were not

11

significant numbers, which it does not, there would still be significant numbers of such jobs in the national economy.

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical questions the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff would be able to perform the jobs of callout operator and surveillance system monitor. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 5th day of December, 2016.

*/s/ Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE